IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TRANSPORT WORKERS UNION OF** | § | |
| **AMERICA (TWU) LOCAL 555,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:14-CV-103-M** |
| | § | |
| **SOUTHWEST AIRLINES COMPANY,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Transport Workers Union (TWU) of America Local 555's ("Plaintiff")

Original Complaint and Emergency Application for Temporary Restraining Order ("TRO") and

Motion for Preliminary Injunction (Doc. 1), filed January 14, 2014. After reviewing the TRO, the

briefing, the response, the record, and the applicable law, the court **denies** Plaintiff's TRO.

## I.    Background

Plaintiff is the bargaining representative of the class of ramp, operations, provisioning, and

freight employees employed by Defendant. Defendant is a domestic airline operating throughout the

United States. On January 7, 2014, Defendant declared an "Operational Emergency" due to the

increased number of ramp service employees taking "sick days" at Chicago's Midway Airport. As

part of the emergency, Defendant required that any employee who called in sick starting on January

8, 2014, must present a doctor's note establishing that he or she was ill. Additionally, on January

8, 2014, and January 9, 2014, Defendant delivered "Fact-Finding Notices" to about 30 employees

to schedule a meeting about their attendance patterns.  The "Operational Emergency" ended at 9:30 a.m. on January 9, 2014.

The current operative collective bargaining agreement ("CBA") between the parties became effective on July 1, 2008.  Plaintiff contends that Defendant is trying to unilaterally add to or alter its binding contract  and seeks to restrain and enjoin Defendant from:

> (1) unilaterally declaring a "State of Operational Emergency" as a spring board for exercising rights it has not bargained for; (2) imposing not bargained-for employee obligations in the form of a requirement that in order to use a "sick day," an employee must see a doctor and bring documentation of the visit; and (3) requiring employees to participate in "Fact-Finding" inquiries aimed at examining the legitimacy of sick days taken over the past three years.

Pl.'s Original Compl. and Emergency Appl. for TRO and Mot. for Prelim. Inj. 3-4.  Plaintiff's Complaint, TRO, and Motion are brought pursuant to the Railway Labor Act, 45 U.S.C. § 151.

Plaintiff contends that Defendant has "deliberately and unilaterally changed certain provisions of a binding contract between [both parties] by creating substantive Employer rights and Employee obligations that are nowhere to be found in the bargained-for CBA which exclusively governs the parties' interactions." Pl.'s Mem. of Law in Supp. of Its Emergency App. for a TRO and Mot. for Prelim. Inj. ("Pl.'s Mem.") 1.  Plaintiff argues that there is no language in the CBA that grants either party the right to declare an "Operational Emergency" or to qualify the right of employees to take a sick day.  *Id.* at 2-3.  Plaintiff emphasizes that this is not a dispute requiring an interpretation of the CBA but a dispute regarding Defendant's attempt to change the terms of the CBA.  *Id.* at 3.  Plaintiff therefore classifies this dispute as a "major dispute" and contends that these actions "are in no way 'arguably justified by the terms of the parties' collective bargaining agreement.'" *Id.* at 3-4 (citing *Consolidated Rail Corp. v. Ry. Labor Execs.' Ass'n et al.*, 491 U.S. 299, 305 (1989)).  Plaintiff also argues that Defendant is implementing "another unilaterally created

employer right and employee obligation in the form of a requirement [to] participate in 'Fact-Finding' inquiries looking to every sick day taken over the past two and one-half to three years to determine its legitimacy." *Id*. at 4.  Plaintiff contends that the CBA does not provide for this type of inquiry, as the CBA limits Defendant to a ten-day period of review (prior to the notice of fact finding).

Defendant argues that this dispute is "minor" under the Railway Labor Act ("the Act"), 45 U.S.C. § 151 *et seq*., and therefore must be submitted to final and binding arbitration.  Def.'s Opp'n to Pl.'s Appl. for TRO and Prelim. Inj. ("Def.'s Opp'n") 1.  It argues that nothing in the CBA restricts its right to declare an "Operational Emergency" and that its decision to do so is arguably justified and not frivolous.  Defendant cites to the "Reasonable Work Rules" and "Management Rights" in the CBA and contends that these provisions give it the authority to make the decisions that it did.  *See id*. at 3-4.  Defendant also cites to Article 1.A and Article 23.A of the CBA to justify its decision.  Defendant explains that according to Article 23.A, "[u]sing sick leave or sick pay for a purpose other than that intended constitutes abuse.  Abuse of sick leave or sick pay shall warrant immediate termination." *Id*. at 9.  Article 1.A states that the CBA's purpose is to further "the well-being of Southwest's Customers, the efficiency of operations, and the continuation of employment under the reasonable working conditions," and that it is "the duty of the Company, the Union, and the Employees to cooperate fully to attain these purposes." *Id*.  Defendant contends that these two provisions taken together, along with the "Reasonable Work Rules" and "Management Rights" allow Defendant to declare the state of "Operational Emergency" and allow Defendant to require employees who call in sick to bring a doctor's note.  *Id*. at 9-10.

Additionally, in defense of its "Fact Finding Hearings," Defendant cites to Article 20-G-1-a of the CBA and explains that the ten-day rule (the rule that says employees shall be advised of the nature of the fact finding not later than ten days from the time Defendant becomes aware of the incident concerning which the fact finding shall be convened) does not mean that Defendant is prevented from considering an employee's history of sick leave usage. *Id*. at 12. Defendant explains that the potential discipline was based on "a history of attendance problems such as a pattern of sick calls on holidays." *Id*. at 12. Defendant asserts that its position "that it complied with Article 20-G-1-a by sending the Fact-Finding-Notices to these employees within 10 days of the most recent absences which prompted the fact-finding hearings cannot be considered frivolous." *Id*. at 20. Finally, Defendant argues that Plaintiff cannot show irreparable harm and that the balance of harms and the public interest support Defendant. *See id*. at 24-25.

## II.   Standard for a Temporary Restraining Order or Preliminary Injunction

Ordinarily, there are four prerequisites for the extraordinary relief of preliminary injunction or temporary restraining order. A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails

to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction.  For the reasons herein explained, the court lacks jurisdiction over this action and does not discuss the prerequisites for a TRO.

## III.  Discussion

### A.  Applicable Law

The United States Supreme Court explained that Congress has distinguished two classes of controversy in the Act: major disputes and minor disputes.  *Consolidated Rail Corp.*, 491 U.S. at 302.  If a major dispute occurs, the Act requires the parties to undergo a process of bargaining and mediation.  *Id*.  A minor dispute, however, is subject to compulsory and binding arbitration.  *Id*. at 303; *see also Allied Pilots Ass'n v. American Airlines*, 898 F.2d 462, 465 (5th Cir. 1990) (finding that a case involving a minor dispute is subject exclusively to resolution by arbitration under the RLA).  The minor dispute category "is predicated on § 2 Sixth and § 3 First (i) of the Act, which set forth conference and compulsory arbitration procedures for a dispute arising or growing 'out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Consolidated Rail Corp.*, 491 U.S. at 302.  "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement.  Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major." *Id*. at 307.

The court determines that Defendant's actions are arguably justified by the terms of the parties' CBA and determines that this dispute should be classified as minor.  Due to the dispute's classification, this action is subject to compulsory and binding arbitration, and the court lacks jurisdiction.  The court will therefore deny Plaintiff's TRO.

**B.**     **The "Operational Emergency" and the Requirement for Documentation When Taking a Sick Day**

Plaintiff contends that Defendant unilaterally altered the operative CBA by declaring a "State of Operational Emergency" and by "imposing not bargained-for employee obligations" by requiring employees to provide documentation from their doctor when taking a "sick day." Article 2-C of the CBA states that "[e]mployees covered by this Agreement shall be governed by all reasonable Company rules and regulations previously or hereafter issued by proper authority of the Company which are not in conflict with the terms and conditions of this Agreement and which have been made available to covered Employees and the Union Office prior to becoming effective." Pl.'s Ex. 3 at 5. Additionally, Article 2-C of the CBA states that "[t]he right to manage and direct the work force, subject to the provisions of this Agreement, is vested in and retained by the Company." *Id*. Finally, Article 23-A of the CBA explains that "[u]sing sick leave or sick pay for a purpose other than that intended constitutes abuse. Abuse of sick leave or sick pay shall warrant immediate termination." *Id*. at 48.

Based on this language set forth in the CBA, the court determines that Defendant's decision to declare a "State of Operational Emergency" and to require employees to provide documentation from their doctor when taking a "sick day" is arguably justified. Defendant explains that 19% of its employees called in sick on December 31, 2013, and 33% called in sick on January 1, 2014. App. in Supp. of Def.'s Opp'n ("Def.'s App.") 5. Defendant planned for about 10-12% of its employees to be absent on those days. *Id*. The high number of absent employees and the poor weather forced Defendant to assign mandatory overtime. *Id*. On January 2, 2014, 30% of the ramp service employees called in sick and another 15% declined assignments due to a ten-hour rest rule. *Id*. at 6. The staffing problems continued throughout the next few days. *Id*. at 8. On January 6, 2013,

30% of the employees scheduled to work today called in sick.  *Id.* at 8.  On January 7, 2013, fifty

employees called in sick.[1]

Given that employees are governed by "all reasonable Company rules and regulations" issued

before and after the CBA went into effect that are not in conflict with the terms and conditions of

the CBA, and given that Defendant has the right to manage and direct the work force, Defendant's

decision to declare an "Operational Emergency" and to require employees to provide documentation

from their doctor when taking sick days is arguably justifiable.[2]  There is no provision in the CBA

that prohibits Defendant from making these types of decisions.  The CBA clearly states that using

sick leave or sick pay for a purpose other than that intended constitutes abuse.  Defendant was

arguably acting pursuant to these provisions in the CBA, and the court does not view these decisions

as frivolous or obviously insubstantial.[3]

### C.    The Fact Finding Inquiries Reviewing Employees' History of Sick Leave Usage

Plaintiff contends that Defendant is unilaterally changing the CBA by requiring employees

to participate in "Fact-Finding" inquiries that review the legitimacy of sick days taken over the past

three years.  Article 20-1-G-1-a states that employees "shall be advised, in writing, with a copy to

---

[1]  Defendant contends that the increase in sick calls was "widely perceived to be a coordinated job action to protest the slow progress in collective bargaining that had been ongoing since 2011."  Def.'s App. 6.  The actual reason for the employees' absence is quite beside the point to the court's analysis.

[2]  In Defendant's initial letter to its ramp employees, Defendant explains that those employees "reporting ill who fail to provide a doctor's statement will be scheduled for a fact-finding and subject to discipline up to and including termination."  Pl.'s Ex. 1.  While the letter is not drafted with the precision of a grammarian, it does not necessarily preclude an employee from explaining why he or she did not see a physician or otherwise *seek* medical attention, as persons who are temporary ill do not always seek medical care beyond self-treatment or home remedies.

[3]  The court emphasizes that it goes no further than to hold that Defendant has met the light burden of persuading the court that its requirement of employees to provide documentation from their doctor when taking a sick day is arguably justified by the terms of the CBA.  *See Consolidated Rail Corp.*, 491 U.S. at 320.  The court does not seek to minimize any force in Plaintiff's argument that the language in the CBA cannot be understood to extend this far.  *See id*. Therefore, the court does not suggest that Defendant is entitled to prevail on the merits of this dispute.  *See id*.

**Memorandum Opinion and Order - Page 7**

the local representative of the Union, of the nature of the factfinding not later than ten (10) calendar days from the time the Company becomes aware of the incident concerning which the factfinding shall be convened." Pl.'s Ex. B at 42.

Based on this language set forth in the CBA, the court determines that Defendant's decision to consider the employee's history or pattern of sick leave usage in its fact-finding inquiry is arguably justified. Defendant's inquiries about absences two to three years ago initially appear to be tenuous; however, Defendant's inquiry into these absences is neither frivolous nor obviously insubstantial. The CBA states that the employee must be told about the factfinding no later than ten days from the time Defendant becomes aware of the *incident* concerning which the factfinding shall be convened. At first glance, the court was under the impression that the *incident* could only be the absence that occurred within that ten-day period, and not an absence that occurred beyond that ten-day period. Defendant contends, however, that the incident within that ten-day period alerted Defendant to the *pattern* of absences that may have occurred previously. Defendant's argument that it complied with the CBA by sending notices to the employees within ten days of the most recent absence which promoted the fact-finding hearing is therefore arguably justified. The *incident* can arguably be either the most recent absence that alerted Defendant to the pattern of absences or it can be the *pattern* of absences itself that Defendant desires to investigate.[4]

## IV.    Conclusion

Since Defendant's actions that Plaintiff seeks to enjoin and restrain are arguably justified and the dispute goes to the interpretation or application of the CBA, the dispute between Plaintiff and

---

[4] The court again emphasizes that it goes no further than to hold that Defendant has met the light burden of persuading the court that its fact finding inquiries reviewing employees' history of sick leave usage is arguably justified by the terms of the CBA. *See Consolidated Rail Corp.*, 491 U.S. at 320.

Defendant is minor.  *International Bhd. of Teamsters v. Southwest Airlines*, 875 F.2d 1129, 1133 (5th Cir. 1989) (en banc).  A case involving a minor dispute is subject exclusively to resolution by arbitration under the RLA.  *See id*.; *see also American Airlines*, 898 F.2d at 465.  Accordingly, Plaintiff's Application for Temporary Restraining Order is **denied**, as the court does not have jurisdiction over this action.

As part of the relief requested, Plaintiff seeks a hearing on its Motion for Preliminary Injunction.  The undersigned issued this opinion in conjunction with his responsibilities as duty judge because of the unavailability of the presiding judge.  Whether a hearing on the Motion for Preliminary Injunction will be held and how this action will proceed are matters for the presiding judge to determine.

**It is so ordered** this 17th day of January, 2014.

Sam A. Lindsay
United States District Judge